no IFP

N/S                    no CV 30



**FILED**
CLERK, U.S. DISTRICT COURT
07/29/2025
CENTRAL DISTRICT OF CALIFORNIA
BY ___GSA___ DEPUTY
DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

1  DR. DENNIS D. SADORRA (Pro Se)
   43-810 SKYWARD WAY
2  LA QUINTA, CA 92253
3  TELEPHONE: (760) 880-8416
   EMAIL: DENNISSADORRA@GMAIL.COM
4

5           UNITED STATES DISTRICT COURT
6          CENTRAL DISTRICT OF CALIFORNIA
7

**DR. DENNIS D. SADORRA,**          Case No.: _5:25-cv-02009-UA_

        Plaintiff,          **COMPLAINT FOR:**

vs.
                            **1. INVALID CCP § 998 OFFER AND**
**STARLIGHT DUNES**          **ABUSE OF PROCESS -**
**HOMEOWNERS ASSOCIATION;**  **VIOLATION OF FIFTH AND**
**DESERT RESORT**            **FOURTEENTH AMENDMENTS**
**MANAGEMENT/ASSOCIA;**      **(42 U.S.C. § 1983)**
**JAY BROWN;**               **2. VIOLATION OF FIFTH**
**MARTIN BONAFEDE;**         **AMENDMENT (TAKING CLAUSE)**
**MARK SUSSMAN;**            **- 42 U.S.C. § 1983**
**DR. AMIR IBRIHIM;**        **3. VIOLATION OF FOURTEENTH**
**JERALD CAVARETTO;**        **AMENDMENT (DUE PROCESS) -**
**DAVID NICK, ESQ.;**        **42 U.S.C. § 1983**
**DELPHI LAW LLP;**          **4. VIOLATION OF FOURTEENTH**
**HAIGHT BROWN & BONESTEEL** **AMENDMENT (EQUAL**
**LLP;**                     **PROTECTION) - 42 U.S.C. § 1983**
**KLINEDINST PC;**           **5. VIOLATION OF CALIFORNIA**
**LIBERTY MUTUAL INSURANCE;** **DAVIS-STIRLING COMMON**
**PHILADELPHIA INDEMNITY**   **INTEREST DEVELOPMENT ACT**
**INSURANCE CO.; AND**       **6. BREACH OF FIDUCIARY DUTY**
**AND DOES 1–10, INCLUSIVE,** **7. ABUSE OF PROCESS**
                            **8. INTENTIONAL INFLICTION OF**
        Defendant           **EMOTIONAL DISTRESS**


                            **DEMAND FOR JURY TRIAL**

## INTRODUCTION

1. Dr. Dennis Sadorra, a decorated Iraq War veteran and retired schoolteacher who owns property at 43810 Skyward Way in the Starlight Dunes community in La Quinta, California. His corner lot sits at the intersection of Skyward Way and Orion Way, making it particularly vulnerable to security concerns. For over six years, Dr. Sadorra has sought approval from the Starlight Dunes Homeowners Association to construct a standard 6-foot security wall entirely on his own property, the same type of wall that exists between over 95% of the 150 homes in the community.

2. Dr. Sadorra's applications have been comprehensive and professional. He submitted detailed architectural drawings, property surveys, and site plans showing that the proposed wall would be entirely within his property boundaries, would not encroach on any easements or common areas, and would provide essential security for his family while maintaining aesthetic compatibility with community standards. The wall would be similar, if not exact, to existing walls throughout the neighborhood and would address legitimate safety concerns for his exposed corner lot property.

3. Despite meeting all architectural requirements and building codes, the HOA has denied several applications Dr. Sadorra has submitted since 2018. The primary and apparently only reason for these denials is to preserve an unobstructed view from the property of Jay Brown, a next-door neighbor and longtime HOA board member. This view protection occurs despite the fact that no view easement exists, and the HOA's own governing documents (CC&Rs) contain no provisions protecting scenic views. Under established

California law dating back to 1898, property owners have no right to scenic views absent express easements or covenant rights that simply do not exist here.

4.  The HOA's treatment of Dr. Sadorra stands in stark contrast to its treatment of other homeowners. The association has routinely approved similar or more intrusive modifications for other residents, particularly board members, while subjecting Dr. Sadorra to escalating harassment and financial pressure. When Dr. Sadorra attempted to run for the HOA board to ensure fair treatment for all homeowners, the board retaliated by imposing a fraudulent fine specifically timed to render him ineligible for the ballot, then removing the fine after the election, a clear abuse of their quasi-governmental authority to suppress political opposition.

5.  The Starlight Dunes HOA operates with powers equivalent to municipal government, including the authority to approve or deny property modifications, impose fines functioning as taxes, record liens, initiate foreclosure proceedings, and control community infrastructure. These quasi-governmental powers are granted by California's Davis-Stirling Common Interest Development Act and constitute "state action" under federal civil rights law. The HOA has systematically abused these powers to enforce a discriminatory agenda benefiting board member Jay Brown at Dr. Sadorra's expense.

6.  The constitutional violations culminated on January 13, 2023, when Defendants served Dr. Sadorra with an invalid settlement offer under California Code of Civil Procedure § 998. The timing was deliberate and malicious: Dr. Sadorra's attorney, David Nick, had unexpectedly withdrawn his representation during the critical response period, leaving Dr. Sadorra unrepresented and vulnerable. The § 998 offer was not a good-faith

settlement attempt, but a weapon designed to coerce Dr. Sadorra into abandoning his constitutional property rights under threat of over $900,000 in attorney fees.

7. The § 998 offer violated multiple constitutional protections. It denied Dr. Sadorra procedural due process by exploiting his lack of counsel and providing inadequate time to respond to constitutional issues. It violated substantive due process by using state legal procedures to accomplish what Defendants could not do directly—force him to waive his property rights as a condition of settlement. It violated equal protection by subjecting him to coercive tactics not applied to similarly situated homeowners. And it constituted a regulatory taking by forcing him to choose between his constitutional rights and financial ruin, completing the deprivation that began with the architectural denials.

8. Faced with Defendants' demand for nearly $900,000—an amount artificially inflated through excessive motions, multiple law firms, and prolonged litigation tactics, Dr. Sadorra had no choice but to file for Chapter 7 bankruptcy for protection. This was precisely the outcome Defendants intended: not to collect legitimate fees, but to destroy Dr. Sadorra's financial stability and force him to abandon his property rights. The bankruptcy discharge occurred on July 15, 2023, approximately six months after the invalid § 998 offer, demonstrating the immediate and devastating impact of Defendants' financial coercion scheme.

9. The consequences of Defendants' constitutional violations continue today. For six years, one-third of Dr. Sadorra's property has remained an unusable dirt lot due to the ongoing HOA litigation and denials. He has suffered over $1.3 million in credit destruction, bankruptcy consequences, and lost property value, while Defendants—having achieved

their goal never actually collected their claimed $900,000, confirming that coercion, not compensation, was their true objective.

10. Dr. Sadorra brings this federal civil rights action under 42 U.S.C. § 1983 because Defendants, acting under color of state law through their quasi-governmental authority, have systematically violated his Fifth and Fourteenth Amendment rights through selective enforcement, procedural abuse, and financial coercion. The state court proceedings have proven inadequate to address these constitutional violations, necessitating federal intervention to vindicate fundamental rights and prevent future abuse of quasi-governmental power. This case presents clear violations of established constitutional principles and seeks both monetary damages and injunctive relief to restore Dr. Sadorra's property rights and prevent similar violations against other homeowners.

## JURISDICTION AND VENUE

11. **Federal Question Jurisdiction.** This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff brings claims under 42 U.S.C. § 1983 for violations of his Fifth Amendment (Takings) and Fourteenth Amendment (Due Process and Equal Protection) rights. Defendants acted under color of state law through quasi-governmental powers granted by California's Davis-Stirling Act, including authority to regulate property use, impose fines, record liens, and control community infrastructure, satisfying the state action requirement for § 1983 liability.

12. **Supplemental Jurisdiction.** This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(a) because they arise from the same operative facts as the federal constitutional violations.

13. **Personal Jurisdiction.** Personal jurisdiction exists over all defendants. California defendants (Starlight Dunes HOA, Desert Resort Management, board members Jay Brown, Martin Bonafede, Mark Sussman, Dr. Amir Ibrihim, Jerald Cavaretto, David Nick, and law firms Delphi Law LLP, Haight Brown & Bonesteel LLP, and Klinedinst PC) are California residents or entities where the violations occurred. Out-of-state defendants Liberty Mutual Insurance (with California offices at 2710 Gateway Oaks Drive, Sacramento, CA) and Philadelphia Indemnity Insurance (with California offices at 330 N Brand Blvd, Glendale, CA) have purposefully conducted substantial business in California, issued the insurance policies funding this litigation, and directed litigation strategy from California, satisfying both general and specific personal jurisdiction requirements.

14. **Venue.** Venue is proper pursuant to 28 U.S.C. § 1391(b) because the constitutional violations occurred in La Quinta, California, within this District, the subject property is located here, defendants reside or conduct business here, and the underlying state court proceedings occurred here.

15. **Standing.** Plaintiff has Article III standing because he suffered concrete injuries directly traceable to Defendants' conduct and redressable by this Court, including: constitutional rights violations; economic losses exceeding $1.3 million from forced bankruptcy and

credit destruction; ongoing property deprivation (one-third of his property unusable for six years); and reputational harm.

**PARTIES**

16. **Plaintiff DR. DENNIS D. SADORRA** is a decorated Iraq War veteran and retired schoolteacher residing at 43810 Skyward Way, La Quinta, California 92253, and is the fee simple owner of said property within the Starlight Dunes development.

17. **Defendant STARLIGHT DUNES HOMEOWNERS ASSOCIATION** is a California nonprofit corporation operating as a common interest development association under the Davis-Stirling Act with powers to regulate property use, impose fines, and enforce architectural controls.

18. **Defendant DESERT RESORT MANAGEMENT/ASSOCIATION** is a California corporation serving as a property management company for Starlight Dunes HOA with its principal place of business in California.

19. **Individual HOA Defendants: JAY BROWN** (California resident, HOA board member whose view benefit motivated the architectural denials); **MARTIN BONAFEDE, MARK SUSSMAN,** and **DR. AMIR IBRIHIM** (California residents who served as HOA board members during relevant times); and **JERALD CAVARETTO** (California resident, Desert Resort Management employee and HOA liaison).

20. **Attorney Defendant DAVID NICK, ESQ.** is a California attorney who previously represented Dr. Sadorra, accepted $30,000 in fees specifically designated for trial, and knew the § 998 offer was constitutionally invalid because he had defended Dr. Sadorra's

property rights for two years. Despite this knowledge, Nick misrepresented the invalid offer as legitimate to Dr. Sadorra, then strategically withdrew his representation during the critical § 998 response period, deliberately leaving Dr. Sadorra unrepresented during crucial constitutional proceedings. By conspiring with HOA defendants to time his withdrawal to exploit Dr. Sadorra's vulnerability and force acceptance of constitutionally invalid settlement terms, Nick acted under color of law in violation of 42 U.S.C. § 1983.

21. **Law Firm Defendants DELPHI LAW LLP, HAIGHT BROWN & BONESTEEL LLP,** and **KLINEDINST PC** are California law firms that represented Starlight Dunes HOA/Desert Resort Management and participated in the abusive litigation tactics culminating in the invalid § 998 offer.

22. **Insurance Defendants LIBERTY MUTUAL INSURANCE** (175 Berkeley Street, Boston, MA 02116; California office: 2710 Gateway Oaks Drive, Sacramento, CA 95833) and **PHILADELPHIA INDEMNITY INSURANCE CO.** (One Bala Plaza, Bala Cynwyd, PA 19004; California office: 330 N Brand Blvd, Glendale, CA 91203) provided coverage for Starlight Dunes HOA and Desert Resort Management, funded the litigation against Dr. Sadorra, and actively directed the litigation strategy that culminated in the invalid § 998 offer.

23. **DOES 1-10** represent unknown individuals or entities who participated in the wrongful conduct alleged herein.

## STATEMENT OF FACTS

### A. Property Background and Security Needs

24. Dr. Sadorra is the fee simple owner of real property located at 43810 Skyward Way, La Quinta, California 92253 (the "Property"). The Property is a corner lot located at the intersection of Skyward Way and Orion Way within the Starlight Dunes community, a common interest development governed by the Starlight Dunes Homeowners Association.

25. The Property is subject to Covenants, Conditions, and Restrictions ("CC&Rs") recorded October 21, 2015 **(Exhibit K)**, which regulate architectural modifications and property use. Notably, the CC&Rs contain no provisions protecting scenic views or prohibiting security walls, requiring only that modifications be "harmonious" with community standards.

26. Dr. Sadorra's corner lot position makes it particularly vulnerable to security concerns, with exposure on two public streets and easy access from multiple directions. The exposed nature of his property creates legitimate safety and privacy concerns that a perimeter security wall would address.

27. Throughout the Starlight Dunes community of approximately 150 homes, over 95% have perimeter walls of similar height and construction to what Dr. Sadorra has requested. Such walls are standard, common, and consistent with community architectural patterns.

**B. The HOA's Quasi-Governmental Authority**

28. Starlight Dunes HOA operates with quasi-governmental powers equivalent to municipal authority granted by California's Davis-Stirling Common Interest Development Act, including the power to: (a) approve or deny architectural modifications through

regulatory review processes similar to city planning departments; (b) impose fines and assessments that function as property taxes; (c) record liens against property and initiate foreclosure proceedings; (d) control access to common areas and community infrastructure; (e) regulate property use through binding rules and regulations with enforcement powers; and (f) provide community services typically provided by local government.

29. Desert Resort Management/Associa serves as the property management company for Starlight Dunes HOA, acting as its agent in day-to-day operations, communications with homeowners, and enforcement activities. The management company implements HOA board decisions and maintains the administrative structure for the association's quasi-governmental functions.

30. These statutory powers constitute "state action" under color of law for purposes of 42 U.S.C. § 1983. When HOA board members and their agents exercise these powers, they act as state actors subject to constitutional limitations on government conduct.

**C. Dr. Sadorra's Architectural Applications and Professional Planning**

31. Beginning in 2018, Dr. Sadorra submitted multiple comprehensive applications to Starlight Dunes HOA seeking approval to construct a 6-foot slump block security wall entirely on his own property. His applications included detailed architectural drawings, property surveys, and professional site plans **(Exhibits C, D, E, and F)** demonstrating that the proposed wall would: (a) be entirely contained within his property boundaries with appropriate setbacks; (b) not encroach upon any easements, common areas, or

neighboring properties; (c) provide essential security and privacy for his corner lot; (d) maintain aesthetic compatibility with existing community walls; and (e) comply with all applicable building codes and CC&R requirements.

32. Dr. Sadorra's May 12, 2020 application **(Exhibit D)** specifically requested approval to "Install 6' slump block wall w/ gates and bougainvillea plants." His September 10, 2020 application **(Exhibit E)** requested approval to "Install Desert Landscape and Block Wall." Both applications included comprehensive documentation showing the legitimate security purposes and professional design of the proposed improvements.

33. The proposed wall would be functionally and aesthetically identical to walls existing throughout the community. Dr. Sadorra provided detailed site plans **(Exhibit C)** showing the professional nature of his security wall proposal and confirming that the wall would enhance rather than detract from community aesthetics while providing necessary security for his vulnerable corner lot.

**D. The HOA's Systematic Denials and Lack of Legal Basis**

34. Despite the comprehensive nature of Dr. Sadorra's applications and the wall's compliance with all applicable requirements, Starlight Dunes HOA has repeatedly denied every application he has submitted over the past six years, from 2018 through 2024.

35. Upon information and belief, the primary—and apparently only—reason for these denials is to protect the unobstructed view from Jay Brown's property. Jay Brown has served continuously as a board member and/or officer of Starlight Dunes HOA during all

relevant times and has been the primary beneficiary of denying Dr. Sadorra's wall
applications.

36. No view easement exists benefiting Jay Brown's property or any other property in the
development. Under established California law dating to Kennedy v. Burnap (1898) 120
Cal. 488, 492, property owners have no inherent right to scenic views absent express
grant or covenant: "The simplest rule and that best suited to a country like ours, in which
changes are taking place in the ownership and the use of lands, is that no right [to views]
can be acquired without express grant of an interest in, or covenant relating to, the lands
over which the right is claimed."

37. The Starlight Dunes CC&Rs **(Exhibit K)** contain no view protection provisions. The
governing documents establish architectural control authority but include no language
protecting scenic views, confirming that Defendants' denials lack any legal foundation in
the HOA's own governing documents.

38. The CC&Rs require fair and equal application of community standards without selective
enforcement or discriminatory practices. By denying Dr. Sadorra's applications while
approving similar modifications for others, Defendants have systematically violated their
own governing documents and fiduciary obligations.

**E. Selective Enforcement and Discriminatory Treatment**

39. Starlight Dunes HOA has engaged in a clear pattern of selective enforcement, approving
similar or more intrusive architectural modifications for other homeowners, particularly
board members, while denying Dr. Sadorra's reasonable and well-documented requests.

40. The HOA has approved walls, landscaping, and other modifications for numerous other properties throughout the community, including modifications that are more visible, more intrusive, or less aesthetically compatible than Dr. Sadorra's proposed security wall.

41. Board members have received particularly favorable treatment, with their architectural requests approved routinely while Dr. Sadorra's professionally designed and thoroughly documented applications are denied based on the preferences of board member Jay Brown.

42. This selective enforcement demonstrates discriminatory treatment designed to benefit Jay Brown at Dr. Sadorra's expense, violating equal protection principles and constituting improper use of quasi-governmental authority for personal benefit rather than legitimate community purposes.

**F. Political Retaliation and Abuse of Authority**

43. When Dr. Sadorra sought to run for a position on the Starlight Dunes HOA Board to help ensure fair treatment for all homeowners, the Board retaliated by fraudulently imposing an unjustified $600 fine on his property, specifically timed to render him ineligible to appear on the election ballot.

44. After the election period ended and Dr. Sadorra was successfully excluded from the ballot, the Board removed the fine, demonstrating that the penalty was purely retaliatory and designed to suppress political opposition rather than enforce legitimate community standards.

45. This fraudulent fine and its strategic timing constitute direct violations of Dr. Sadorra's Fourteenth Amendment equal protection rights and First Amendment associational rights, demonstrating Defendants' systematic abuse of quasi-governmental authority to maintain control over the HOA board composition and perpetuate the discriminatory system that benefits Jay Brown.

## G. Coordinated Pattern of Financial Coercion

46. Beginning in 2020, Defendants embarked on a coordinated scheme to extract money from Dr. Sadorra through fraudulent means and abuse of quasi-governmental authority. This enterprise involved: (a) repeatedly denying legitimate architectural applications without legal basis to create artificial disputes; (b) imposing excessive and unjustified fines and assessments; (c) retaining multiple law firms simultaneously to maximize billing opportunities; (d) filing excessive and unnecessary motions to artificially inflate legal expenses; (e) prolonging litigation through baseless appeals and procedural maneuvers; and (f) using the threat of overwhelming legal fees as a weapon to coerce unfair settlement.

47. The insurance companies Liberty Mutual and Philadelphia Indemnity actively participated in this scheme by funding the excessive litigation and directing a strategy designed to financially destroy Dr. Sadorra rather than resolve the underlying dispute. Rather than encouraging reasonable settlement, the insurers funded increasingly aggressive and expensive litigation tactics.

48. As evidenced by the HOA's insurance coverage documentation **(Exhibit H)** and budget materials **(Exhibit I)**, the association had ample insurance coverage and financial resources, making their claims of excessive legal costs suspect and their demand for reimbursement from Dr. Sadorra appear retaliatory rather than necessary.

### H. The Invalid CCP § 998 Offer and Constitutional Violations

49. The culmination of Defendants' abuse of quasi-governmental authority occurred on January 13, 2023, when they served Dr. Sadorra with a settlement offer under California Code of Civil Procedure § 998 **(Exhibit B)** that was both procedurally and substantively invalid and designed to violate his constitutional rights.

50. **Procedural Due Process Violations:** The § 998 offer violated procedural due process because: (a) it was served during a period when Dr. Sadorra was without legal counsel due to his attorney's unexpected withdrawal; (b) the timing was deliberately calculated to exploit Dr. Sadorra's lack of representation; (c) it denied him adequate time and fair opportunity to respond to the constitutional issues raised; (d) no good faith settlement conference was provided before service of the coercive offer; (e) the offer was designed not to facilitate settlement but to impose cost-shifting penalties; and (f) Defendants coordinated the timing to maximize Dr. Sadorra's vulnerability.

51. **Substantive Due Process Violations:** The § 998 offer violated substantive due process because: (a) it required Dr. Sadorra to waive his constitutional property rights as a condition of settlement; (b) it used state legal procedures to accomplish an unconstitutional purpose—forcing abandonment of property rights; (c) the terms were so

one-sided and arbitrary as to shock the conscience; (d) it was not made in good faith but was designed as a weapon of financial coercion; (e) the offer specifically required acceptance of only a partial wall (50-foot by 15-foot) rather than the full security protection Dr. Sadorra needed, while simultaneously demanding he pay $1,900 in disputed fines and $6,673.50 in assessments; and (f) it forced Dr. Sadorra to choose between exercising constitutional rights and facing financial ruin.

52. **Equal Protection Violations:** The § 998 offer violated equal protection because: (a) other homeowners were not subjected to similar coercive settlement tactics; (b) the offer was part of the selective enforcement pattern targeting Dr. Sadorra specifically; (c) it was designed to benefit board member Jay Brown at Dr. Sadorra's expense; and (d) similarly situated homeowners received favorable treatment while Dr. Sadorra was subjected to punitive legal tactics.

53. **Takings Clause Violations:** The § 998 offer constituted a regulatory taking without just compensation by: (a) forcing Dr. Sadorra to choose between his constitutional property rights and financial destruction; (b) using state legal procedures to accomplish what could not be done directly; (c) providing no compensation for the coerced waiver of property rights; and (d) completing the regulatory taking that began with the architectural denials.

**I. Attorney David Nick's Betrayal and Conspiracy**

54. Dr. Sadorra's attorney, David Nick, played a crucial role in the constitutional violations by conspiring with Defendants to exploit the attorney-client relationship. Nick had represented Dr. Sadorra for approximately two years, defending his property rights and

architectural applications, giving him intimate knowledge of the legal and constitutional issues involved.

55. Nick accepted approximately $30,000 in fees from Dr. Sadorra specifically designated for trial preparation and representation. Despite his knowledge of Dr. Sadorra's constitutional property rights and the legal invalidity of view protection claims under California law, Nick misrepresented the § 998 offer as legitimate when he knew it violated established constitutional principles.

56. When Dr. Sadorra questioned the offer's validity, Nick strategically abandoned him by withdrawing his representation during the critical § 998 response period. As evidenced by the Court Order Granting Attorney's Motion to be Relieved as Counsel dated May 18, 2023 **(Exhibit J)**, Nick's withdrawal was deliberately timed to leave Dr. Sadorra unrepresented during crucial constitutional proceedings.

57. Nick's conduct constitutes conspiracy under color of law with the HOA defendants, making him liable under 42 U.S.C. § 1983. By using his position as Dr. Sadorra's attorney to advance the HOA's scheme while abandoning his client at the critical moment, Nick acted under color of law to deprive Dr. Sadorra of constitutional rights as well as refused to return Dr. Sadorra's $30,000 designated for trial which never took place.

**J. Dr. Sadorra's Response and State Court Inadequacy**

58. Despite being without counsel and facing the deadline pressure created by Defendants' timing, Dr. Sadorra filed a comprehensive 14-page response to the invalid § 998 offer on

May 25, 2025 **(Exhibit A)**. His response detailed the constitutional violations, cited extensive legal authority including Kennedy v. Burnap regarding the absence of view rights, and provided thorough legal analysis demonstrating why the offer was procedurally and substantively invalid under both state and federal law.

59. Dr. Sadorra's response specifically identified the offer's violations of constitutional property rights, failure to meet good faith requirements, lack of unconditional terms, and absence of any reasonable prospect of acceptance. The response demonstrated sophisticated legal analysis and raised substantial constitutional issues that required federal court intervention.

60. The state court proceedings failed to adequately address the constitutional violations raised in Dr. Sadorra's response, as documented in the court record **(Exhibit L)**. The inadequacy of state court remedies to address constitutional deprivations demonstrates the necessity of federal intervention under 42 U.S.C. § 1983.

## K. Forced Bankruptcy and Financial Destruction

61. During court-ordered mediation, Defendants made the shocking demand that Dr. Sadorra pay them nearly $900,000 in attorney fees and costs—an amount artificially inflated through their deliberate scheme of excessive motions, multiple law firms, and prolonged litigation tactics designed to create overwhelming financial pressure.

62. This exorbitant demand was not a legitimate cost recovery but the culmination of Defendants' enterprise to use litigation as a weapon of financial coercion. The nearly

$900,000 figure represented the successful execution of their plan to make resistance to their constitutional violations financially impossible.

63. Faced with Defendants' demand for over $900,000 and lacking any means to pay such an artificial and coercive sum, Dr. Sadorra was forced to file Chapter 7 bankruptcy as his sole protection from financial ruin. As evidenced by the Bankruptcy Discharge Order dated July 15, 2023 **(Exhibit G)**, Dr. Sadorra received his discharge in case number 6:23-bk-11327-RB approximately six months after the invalid § 998 offer was served.

64. The timing demonstrates the immediate and devastating impact of Defendants' financial coercion scheme. The bankruptcy filing was the direct and foreseeable consequence of Defendants' abusive litigation strategy, specifically designed to destroy Dr. Sadorra's financial stability and force abandonment of his constitutional property rights.

65. Significantly, while Dr. Sadorra has borne all the devastating consequences of bankruptcy—credit destruction, financial ruin, and reputational harm—Defendants never actually collected their claimed $900,000, confirming that their true intent was coercion and intimidation rather than legitimate recovery.

**L. Ongoing Damages and Continuing Violations**

66. The consequences of Defendants' constitutional violations continue to this day. For over six years, one-third of Dr. Sadorra's property (approximately 1,200 square feet of his side yard) has remained an unusable dirt lot due to the ongoing litigation and HOA's continued denial of his security wall applications.

67. Dr. Sadorra has suffered quantifiable damages including: (a) credit destruction and bankruptcy consequences valued at $1,300,000; (b) attorney fees for defending against frivolous constitutional violations: $120,000; (c) loss of property use and enjoyment over six years: $72,000; (d) attorney fee refunds wrongfully retained by David Nick: $60,000; (e) emotional distress and mental anguish: $200,000; (f) future credit impacts and increased borrowing costs over ten years: $100,000; (g) total quantifiable damages exceeding $1,852,000.

68. The property remains under the same architectural restrictions that violate Dr. Sadorra's constitutional rights. The HOA continues to operate under the same discriminatory enforcement patterns, and Dr. Sadorra continues to be denied the basic security protections that other homeowners enjoy.

69. Defendants' conduct was willful, malicious, and calculated to inflict maximum financial and reputational damage. Individual defendants Jay Brown, Martin Bonafede, Mark Sussman, Dr. Amir Ibrihim, Jerald Cavaretto, and David Nick acted with full knowledge that their conduct violated clearly established constitutional rights yet deliberately chose to prioritize personal interests over Dr. Sadorra's constitutional protections.

70. The systematic nature of these violations, the abuse of quasi-governmental authority, and the devastating consequences to Dr. Sadorra demonstrate the need for substantial monetary damages and injunctive relief to vindicate constitutional rights and deter similar violations against other homeowners.

**FIRST CAUSE OF ACTION**

**Invalid CCP § 998 Offer and Abuse of Process**

**(42 U.S.C. § 1983 - Violation of Constitutional Rights - Against All Defendants)**

71. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

72. Defendants' service of an invalid CCP § 998 offer constituted abuse of state legal procedures in violation of the Fifth and Fourteenth Amendments to the United States Constitution, representing the culmination of their systematic deprivation of Dr. Sadorra's constitutional rights.

73. The § 998 offer violated procedural due process by denying Dr. Sadorra adequate time and opportunity to respond, exploiting his lack of counsel, failing to provide fair hearing procedures, and using state procedures as weapons of financial coercion rather than legitimate settlement tools.

74. The § 998 offer violated substantive due process by using state procedures to accomplish unconstitutional purposes, requiring waiver of constitutional rights as a settlement condition, and employing methods so arbitrary and conscience-shocking that they violate fundamental fairness.

75. The § 998 offer violated equal protection by subjecting Dr. Sadorra to coercive tactics not applied to similarly situated homeowners and continuing the pattern of selective enforcement designed to benefit board member Jay Brown.

76. The § 998 offer constituted a taking without just compensation by forcing Dr. Sadorra to choose between constitutional rights and financial ruin, completing the regulatory taking that began with the denial of architectural applications.

77. Defendants acted under the color of state law through their exercise of quasi-governmental authority granted by state statute, making their constitutional violations actionable under 42 U.S.C. § 1983.

78. As a direct and proximate result of this constitutional violation, Plaintiff has suffered damages exceeding $1,852,000.

## SECOND CAUSE OF ACTION

## Violation of Fifth Amendment - Takings Clause

## (42 U.S.C. § 1983 - Against All Defendants)

79. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

80. The Fifth Amendment to the United States Constitution prohibits the taking of private property for public use without just compensation.

81. Defendants, acting under color of state law as a quasi-governmental entity, have effected a regulatory taking of Plaintiff's property without just compensation by depriving him of the reasonable use and enjoyment of his property.

82. Defendants' actions constitute a regulatory taking by completely depriving Dr. Sadorra of all economically viable use of his property. For the past six years, 1/3 of his property has remained an unusable dirt lot due to HOA litigation preventing any use or enjoyment.

The denial of basic security improvements has rendered the property functionally
unusable for residential purposes, constituting a taking of all reasonable use.

83. The denial of Plaintiff's wall applications to protect an unprotected view of a board
member constitutes a taking for private benefit rather than public use.

84. Defendants have provided no just compensation for this taking of Plaintiff's property
rights.

85. As a direct and proximate result of Defendants' violations of the Fifth Amendment,
Plaintiff has suffered damages exceeding $1,852,000.

**THIRD CAUSE OF ACTION**

**Violation of Fourteenth Amendment - Due Process**

**(42 U.S.C. § 1983 - Against All Defendants)**

86. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

87. The Fourteenth Amendment to the United States Constitution prohibits state actors from
depriving any person of life, liberty, or property without due process of law.

88. Defendants, acting under color of state law, have deprived Plaintiff of his property rights
without due process of law.

89. Defendants' arbitrary and capricious denial of Plaintiff's legitimate architectural
applications, without legal basis or fair hearing, violates substantive due process.

90. Defendants' use of an invalid CCP § 998 offer during a period when Plaintiff was without
counsel violates procedural due process.

91. Defendants' pattern of selective enforcement and favoritism toward board members violates Plaintiff's right to fair and equal treatment under the law.

92. As a direct and proximate result of Defendants' violations of the Fourteenth Amendment Due Process Clause, Plaintiff has suffered damages exceeding $1,852,000.

## FOURTH CAUSE OF ACTION

## Violation of Fourteenth Amendment - Equal Protection

## (42 U.S.C. § 1983 - Against All Defendants)

93. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

94. The Fourteenth Amendment to the United States Constitution guarantees all persons the equal protection of the laws.

95. Defendants, acting under color of state law, have denied Plaintiff equal protection of the laws by subjecting him to selective enforcement of HOA rules and regulations.

96. Defendants have treated Plaintiff differently from similarly situated homeowners, particularly board members, without rational basis or legitimate justification.

97. Defendants' approval of architectural modifications for board members while denying similar requests from Plaintiff constitutes discriminatory treatment that violates equal protection.

98. This selective enforcement was motivated by improper favoritism and designed to benefit board member Jay Brown at Plaintiff's expense.

99. As a direct and proximate result of Defendants' violations of the Equal Protection Clause, Plaintiff has suffered damages exceeding $1,852,000.

**FIFTH CAUSE OF ACTION**

**Violation of California Davis-Stirling Common Interest Development Act (Against HOA Defendants)**

100.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

101.     The California Davis-Stirling Common Interest Development Act, in conjunction with California Corporations Code § 7231, imposes fiduciary duties upon homeowners association boards of directors, requiring them to act in good faith, in the best interests of the association, and with the care that an ordinarily prudent person would exercise under similar circumstances.

102.     Defendants Starlight Dunes HOA, Jay Brown, Martin Bonafede, Mark Sussman and Dr. Ibrihim owed fiduciary duties to Plaintiff as a member of the association.

103.     Defendants breached their fiduciary duties by: a. Engaging in selective enforcement of architectural guidelines based on favoritism rather than legitimate criteria; b. Acting in bad faith and for improper purposes to benefit board member Jay Brown; c. Failing to exercise their authority in the best interests of all homeowners; d. Using their positions for personal benefit and to harm Plaintiff; e. Retaliating against Dr. Sadorra by fraudulently imposing a $600 fine specifically timed to prevent him from running for election to the HOA Board, then removing the fine after the election demonstrating their willful abuse of quasi-governmental authority to suppress political opposition and maintain discriminatory control over the association, in direct violation of their fiduciary

duties and the Davis-Stirling Act's requirements for fair governance and equal treatment of all members.(f) Violating the HOA's own governing documents **(Exhibit K)** by denying architectural applications without legal basis in the CC&Rs; g. Misapplying architectural control authority granted under the CC&Rs to accomplish unauthorized view protection not contemplated in the governing documents.

104.    Defendants' selective enforcement of HOA rules violates both the anti-discrimination provisions of the Davis-Stirling Act and the equal treatment requirements established in the HOA's own CC&Rs **(Exhibit K)**, which require fair application of community standards without discriminatory practices.

105.    As evidenced by Defendants' violations of their own governing documents **(Exhibit K)** and systematic denial of legitimate architectural applications **(Exhibits D and E)**. California Civil Code § 5975(c) provides for recovery of attorney fees and costs for violations of the Davis-Stirling Act. As a direct and proximate result of Defendants' breaches of fiduciary duty and violations of California Corporations Code § 7231 (fiduciary duties) and Civil Code § 5855 (enforcement procedures), Plaintiff has suffered damages exceeding $1,389,000 and is entitled to attorney fees under § 5975(c).

# SIXTH CAUSE OF ACTION

# Breach of Fiduciary Duty

# (Against HOA Defendants)

106.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

107.     Defendants Starlight Dunes HOA and its board members owed Plaintiff fiduciary

duties as members of a homeowners association under California Corporations Code §

7231, including duties of loyalty, care, good faith, and the duty to act in the best interests

of the association and with the care that an ordinarily prudent person would use under

similar circumstances.

108.     Defendants breached these fiduciary duties by placing the personal interests of

board member Jay Brown above the legitimate interests of Plaintiff and the association as

a whole.

109.     The repeated denial of Plaintiff's architectural applications for the sole purpose of

protecting Jay Brown's view constitutes a breach of the duty of loyalty and good faith.

110.     As a direct result of these breaches, Plaintiff has suffered damages exceeding

$1,852,000.

**SEVENTH CAUSE OF ACTION**

**Abuse of Process**

**(Against All Defendants)**

111.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth

herein.

112.     Defendants used legal process, specifically the CCP § 998 settlement procedure,

for an improper purpose other than that intended by law.

113.     The § 998 offer was not served to facilitate legitimate settlement but to coerce Dr.

Sadorra into waiving constitutional rights and to impose punitive cost-shifting penalties.

114.        Defendants' use of the § 998 procedure constitutes abuse of process because it
was employed for collateral purposes beyond legitimate settlement negotiations.

115.        As a direct result of this abuse of process, Plaintiff has suffered damages
exceeding $1,852,000.

# EIGHTH CAUSE OF ACTION

# Intentional Infliction of Emotional Distress

# (Against All Defendants)

116.        Plaintiff incorporates by reference all preceding paragraphs as if fully set forth
herein.

117.        Defendants engaged in extreme and outrageous conduct by systematically
targeting Dr. Sadorra for discriminatory treatment, abuse of legal procedures, and
financial coercion.

118.        Defendants' conduct was intended to cause emotional distress or was undertaken
with reckless disregard for the probability of causing emotional distress.

119.        As a direct result of Defendants' extreme and outrageous conduct, Plaintiff has
suffered severe emotional distress, including anxiety, depression, and other psychological
harm.

120.        Plaintiff has suffered damages exceeding $300,000 for emotional distress and
mental anguish.

# DEMAND FOR PUNITIVE DAMAGES

121.    The conduct of individual defendants Jay Brown, Martin Bonafede, Mark
Sussman, Dr. Amir Ibrihim, Jerald Cavaretto, and David Nick was willful, malicious,
oppressive, and in conscious disregard of Dr. Sadorra's constitutional rights. These
defendants acted with full knowledge that: (a) California law provides no view protection
without express easements; (b) the Davis-Stirling Act requires uniform rule application;
(c) constitutional due process requires fair procedures; (d) equal protection prohibits
selective enforcement; and (e) procedural abuse of § 998 offers violate constitutional
rights.

122.    Despite this knowledge, defendants deliberately chose to abuse their positions of
authority to inflict maximum financial and emotional harm on Dr. Sadorra for the
personal benefit of Jay Brown. Their conduct was so egregious and conscience-shocking
that it warrants substantial punitive damages to deter similar constitutional violations and
vindicate important federal interests in protecting individual rights from abuse of quasi-
governmental power.

123.    Punitive damages are appropriate to punish defendants' willful constitutional
violations and to deter others from similar abuse of homeowner's association authority
against vulnerable homeowners.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests:

124.     **Declaratory Relief:** Declaration that Defendants violated Plaintiff's constitutional and statutory rights through their abuse of quasi-governmental authority and invalid CCP § 998 procedures;

125.     **Injunctive Relief:** Issue a permanent injunction: a. Requiring Defendants to approve Plaintiff's application to construct a 6-foot slump block wall on his property; b. Prohibiting Defendants from further selective enforcement of HOA rules and regulations; c. Prohibiting Defendants from further violations of Plaintiff's constitutional rights; d. Prohibiting Defendants from further abuse of legal procedures to circumvent constitutional protections;

126.     **Compensatory Damages:** Award of actual damages exceeding $1,852,000, including: a. Credit destruction and bankruptcy consequences: $1,300,000; b. Attorney fees defending against frivolous constitutional violations: $120,000; c. Loss of property use and enjoyment: $72,000; d. Attorney fee refunds wrongfully retained: $60,000; e. Emotional distress and mental anguish: $200,000; f. Future credit impacts and increased costs: $100,000;

127.     **Punitive Damages:** Award punitive damages of $5,000,000 against the individual Defendants whose willful and malicious conduct in abusing quasi-governmental authority justifies such an award;

128.     **Civil Rights Attorney Fees:** Award Plaintiff reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 for vindication of constitutional rights and California Civil Code § 5975(c) for violations of the Davis-Stirling Act;

129.     **Interest:** Pre-judgment and post-judgment interest as allowed by law;

130.      **General Relief:** Grant such other and further relief as this Court deems just and proper.

## EXHIBIT LIST

**The following exhibits are attached hereto and incorporated by reference:**

**EXHIBIT A:** Defendant's Response to Plaintiff's Statutory Offer CCP § 998 (May 25, 2025)

**EXHIBIT B:** Plaintiff's Statutory Offer to Compromise CCP § 998 (January 13, 2023)

**EXHIBIT C:** Property Site Plans - Dr. Sadorra's Security Wall Design Plans

**EXHIBIT D:** Application for Architectural/Landscape Modification Approval (May 12, 2020)

**EXHIBIT E:** Application for Architectural/Landscape Modification Approval (September 10, 2020) - "Install Desert Landscape and Block Wall"

**EXHIBIT F:** Property Survey and Plot Plan - Detailed Property Boundaries

**EXHIBIT G:** Order of Discharge - Chapter 7 Bankruptcy Case No. 6:23-bk-11327-RB (July 15, 2023)

**EXHIBIT H:** Certificate of Liability Insurance - Starlight Dunes HOA

**EXHIBIT I:** Budget Summary Report - Starlight Dunes HOA (2020)

**EXHIBIT J:** Order Granting Attorney's Motion to be Relieved as Counsel - J. David Nick (May 18, 2023)

**EXHIBIT K:** Amended and Restated Declaration of Covenants, Conditions, and Restrictions (CC&Rs) - Starlight Dunes HOA (Recorded October 21, 2015)

**EXHIBIT L:** Court Record - § 998 Response Ignored by State Court

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

**Dated:** July 29, 2025

**Respectfully submitted,**

DENNIS D. SADORRA *(Plaintiff, Pro Se)*
43-810 SKYWARD WAY
LA QUINTA, CA 92253
TELEPHONE: (760) 880-8416
EMAIL: DENNISSADORRA@GMAIL.COM

# VERIFICATION

I, Dr. Dennis D. Sadorra, am the Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The facts alleged therein are true of my own knowledge, except as to those matters which are alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 29, 2025, at La Quinta, California.

DR. DENNIS D. SADORRA
Plaintiff, Pro Se

**EXHIBIT A:** Defendant's Response to Plaintiff's Statutory

Offer CCP § 998 (May 25, 2025)

# EXHIBIT A

Electronically FILED by Superior Court of California, County of Riverside on 05/02/2025 11:48 AM
Case Number PSC2003087 0000127802849 - Jason B. Galkin, Executive Officer/Clerk of the Court By Gloria Hernandez, Clerk

DENNIS D. SADORRA (IN PRO PER)
43-810 SKYWARD WAY
LAQUINTA, CA 92253
TELEPHONE: (760) 880-8416
EMAIL: DENNISSADORRA@GMAIL.COM

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE, PALM SPRINGS COURTHOUSE

| | |
|---|---|
| STARLIGHT DUNES HOMEOWNERS ASSOCIATION,<br><br>        Plaintiff,<br><br>v.<br><br>DENNIS SADORRA,<br><br>        Defendant. | **CASE NO. PSC2003087**<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFF'S CCP § 998 OFFER TO COMPROMISE** |
| DENNIS SADORRA,<br><br>        Cross-Complainant,<br><br>v.<br><br>STARLIGHT DUNES HOMEOWNERS ASSOCIATION, DESERT RESORT MANAGEMENT, JAY BROWN, MARTIN BONFEDE,<br><br>        Cross-Defendants. | |

1

**DEFENDANT'S RESPONSE TO PLAINTIFF'S CCP § 998 OFFER TO COMPROMISE**

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

Please take notice, Plaintiffs' Offer to Compromise, (CCP § 998) to Defendant, submitted to this court (dated January 13, 2023), does not satisfy mandated requirements (**Exhibit A**). Namely, offer infringes on due process of law, i.e. Defendant's Fifth and Fourteenth Amendment Rights. It furthermore fails to consider Defendant's constitutional private property rights. Defendant's 998 response is not within mandated timeline because Defendant's attorney quit and asked presiding judge to be excused from the case without providing any advice or response to 998. Defendant only recently found out that Plaintiffs' 998 is invalid after appealing to the U.S. Supreme Court. Above all, Plaintiffs' § 998 offer undermines Defendant's constitutional right to build a block wall that would secure his property. Plaintiff / Counter Defendant has, and continues to protect the view of neighboring property owner (an HOA board member Jay Brown), a clear violation of California Supreme Court ruling in *Kennedy v. Burnap* (1898) 120 Cal. 488, and HOA Davis-Stirling Act. (Anti- Selective Enforcement).

According to the California Supreme Court, a property owner's view is not, in and of itself, protected. *See. Kennedy v. Burnap* (1898) 120 Cal. 488 ("The simplest rule and that best suited to a country like ours, in which changes are taking place in the ownership and the use of lands, is that no right [to views] can be acquired without express grant of an interest in, or covenant relating to, the lands over which the right is claimed." ). Further, "… A landowner has no natural right to air, light or an unobstructed view, and the law is reluctant to imply such a right." *Pacifica Homeowners Association v. Wesley Palms Retirement Community*, (1986) 178 Cal. App. 3d 1147. More so, "...Such a right may be created by private parties through the granting of an easement or through the adoption of conditions, covenants and restrictions..." 178 Cal. App. 3d 1147. To the contrary, there is no easement or CC&R protecting HOA member Brown's view, yet five applications submitted by Defendant for a slump block wall between their properties were all refused, of which Defendant has

2

documentation to substantiate these denials. Hence, Starlight Dunes HOA's  repeated denials of documented architectural applications violates the law and governing CC&Rs, and has caused financial harm to Defendant.

Further, Starlight Dunes HOA, in denying Defendant's request, violated his constitutional right to use and  enjoy his own property. Specifically, HOA board, acting as a quasi-governmental body, elevated its board member, Jay Brown's demands, over Defendant's constitutional rights. Relatively, governments, generally, shall not arbitrarily infringe on the basic right of an individual to acquire, possess, and freely transfer real property, and shall protect private property rights as mandated by the 5th and 14th Amendments.

While Starlight Dunes HOA is not a government in the traditional sense, an HOA is considered a quasi-governmental or governing body since it enforces rules, manages common areas, and provides services within a community (like a municipality). Hence, every HOA's governing documents, including bylaws, must comply with federal and state laws and respect constitutional rights. Thus, when a conflict arises between HOA rules and the law, the law must ultimately supersede, therefore rendering the relevant  HOA rule unenforceable.

More importantly, the Takings Clause prohibits government from taking private property for public use without "just compensation." By the same reasoning, denying Defendant use and enjoyment of his own land equates to a Taking. More particularly, HOA board denied Defendant's applications in favor of one of their members.

The Fourteenth Amendment establishes that "No state" (which must inherently apply to quasi-governmental bodies) "shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal

3

1

2

protection of the laws..." The action at hand presents both deprivation of use of land and a violation of

the equal protection clause (illegal "view protection" for one neighbor at the expense of another).

3

4

The Davis-Stirling Common Interest Development Act governs HOAs in California and

mandates equal application of rules and regulations. i.e., HOAs have a fiduciary duty to act in the

5

best interests of all its members, which includes impartially enforcing rules. Defendant, to the

6

7

contrary, was subject to Selective Enforcement. To be exact, rules were enforced against Defendant

but not against Jay Brown an HOA board member (Plaintiff / Counter-Defendant). A clear breach of

8

9

fiduciary duty and a violation of the Davis-Stirling Act.

10

More so, a Section 998 is a compromise in "good faith." and must be realistically reasonable

11

based on the case's specific circumstances at the time of the offer. It should not be a token or nominal

12

offer designed only to shift costs, but rather one that genuinely reflects a possible settlement. Further,

13

the terms of offer must be unconditional, i.e., no strings attached or hidden conditions that would

14

prevent offer from being accepted. Additionally, an offer must be within the range of potential

15

outcomes at trial and reflect a realistic assessment of the case's value. Conversely, Plaintiff did not act

16

in good faith and 998 presented does not satisfy legal requirements. i.e., asking Defendant to ignore

17

the established "no rights to a view" law in California as well as overriding Defendant's constitutional

18

rights of protection of property. Plaintiffs' actions have caused unnecessary harm to Defendant,

19

further, the court, in presuming Plaintiffs' claims to be valid sided with Plaintiff, subjecting

20

Defendant to legal costs of over $900,000 (claimed by Plaintiff) thus forcing Defendant into Chapter

21

7 Bankruptcy, ruining his credit. If a CCP Section 998 offer includes a term that violates

22

constitutional / property law or due process, the offer is invalid.

23

24

25

26

4

Plaintiffs' § 998 is invalid and cost shifting provisions should not have been considered by the court because it did not apply. The court's actions were based on an invalid offer which necessitates the court to reverse and vacate its decision.

Plaintiffs did not provide an offer that would move Defendant towards possible settlement. Plaintiffs presented § 998 in order to claim that they have made efforts to settle with Defendant (without addressing their violations of Federal, State, local laws, city codes and CC&Rs). Hence, Plaintiffs provided a one-sided view to the court.

Plaintiffs, furthermore, give the impression of an "Unconditional Offer" i.e., no strings or hidden conditions that would prevent offer from being accepted. When in reality Plaintiff is fully aware Defendant would not accept offer. Generally because Defendant presented numerous offers prior to litigation that were § 998 compliant. Further, Defendant outlined concerns of Federal, State, local laws and codes that Plaintiff is in violation of prior to litigation, Plaintiffs, however ignored Defendant's concerns in a slanted settlement offer that hid violations from the court.

Again, a § 998 offer must be based on "Reasonable Prospect of Acceptance." Specifically, offer should be within the range of potential outcomes and reflect a realistic assessment of the case. Plaintiffs, however, fall short of 'potential outcomes and realistic assessment', particularly by refusing to acknowledge they violated Defendant's rights to his property.

As necessary for this court to consider Plaintiffs' violation of Defendant's Constitutional Rights, Defendant (Dennis Sadorra) hereby offers to compromise and fully resolve all claims asserted against him by Plaintiff (Starlight Dunes Homeowners Association) in the Complaint filed under the above-entitled action (**Exhibit A**). This Offer is made pursuant to California Code of Civil Procedure § 998 and is subject to the following terms and conditions:

5

1. **Monetary Settlement**: Plaintiffs shall pay Defendant the total sum of $3,000,000. For charging over $900,000 in legal fees which ruined Defendant's credit, marking his credit with a historical bankruptcy and negative credit score. Furthermore, for loss of income, property devaluation, years of emotional distress, and irreparable harm to Defendant's reputation within the community.

2. **Non-Monetary Settlement**: Plaintiffs shall put into writing that Defendant, pursuant to CC&Rs is not prohibited from building and installing a 6-foot slump block wall around the South Side of his property (**Exhibit B**).

3. **Time Period**: Plaintiffs agree that Defendant, shall within one-year of accepting this Offer, (pursuant to CC&Rs Community Agreement) install a 6-foot slump block wall with a gate as depicted in **Exhibit B**..

4. **Matching Appearance. Gate/ Block Wall Materials**: As reasonably practicable, new block wall /gate materials and appearance will match existing rear yard block wall /gate on property. Defendant shall install a driveway or pathway to the gate for the new wall, in accordance with CC&R and Community Governing Documents.

5. **General Release:** Upon acceptance of this offer, Plaintiff shall execute a general release of all claims related to this matter against Defendant.

6. **Dismissal with Prejudice**: Plaintiff shall file dismissal with prejudice of above captioned Complaint within five (5) court days of payment being received. Defendant shall agree to dismissal of Counterclaim.

7. **No Admission of Liability**:This settlement offer is made for the sole purposes of compromising disputed claims and avoiding the expense, inconvenience, and uncertainty of continued litigation. Settlement Offer shall not be construed  as an admission of liability.

6

8. **Court Costs and Attorney Fees:** Each party shall bear its own costs and attorney fees (incurred in the course of this action).

9. This offer is subject to the provisions of the Code of Civil Procedure § 998.

10. Defendant makes this offer in respect to the above captioned Complaint and Cross-Complaint.

11. Plaintiff / Cross-Defendant (Starlight Dunes Homeowners Association) shall waive all fees and costs incurred in litigating Complaint / Cross Complaint.

12. Upon acceptance of this offer, Plaintiff shall indicate acceptance by (a) having its counsel sign and date the Notice of Acceptance below (b) send a signed copy of Notice of Acceptance to Defendant, before the expiration of offer.

13. If this Offer is not accepted prior to trial, or within thirty (30) days from the date of service hereof, whichever occurs first, it shall be deemed withdrawn and cannot be given in evidence upon trial of Action.

14. If this Offer is not accepted and Plaintiff / Cross Defendant fails to obtain a favorable judgment, it will be subject to mandatory cost penalties, as provided under Code of Civil Procedure Section 998, including but not limited to expert witness expenses, litigation costs, and prejudgment interest. Further, the costs and fees to which Defendant / Cross-Complainant may be entitled under section 998 shall be deducted from any damages awarded to Plaintiff, if any. By signing below, Plaintiff agrees to accept the foregoing Offer.

Dated: April 30, 2025

Respectfully Submitted,

Dr. DENNIS D. SADORRA
DEFENDANT (IN PRO PER)

7

**DEFENDANT'S RESPONSE TO PLAINTIFF'S CCP § 998 OFFER TO COMPROMISE**

**NOTICE OF ACCEPTANCE OF STATUTORY OFFER OF COMPROMISE**

Plaintiff Starlight Dunes Homeowners Association accepts Defendant Dr. Dennis Sadorra's

Offer to Compromise according to the terms and conditions specified above, by and through

Starlight Dunes Homeowners Association attorney of record's execution and delivery

of this Notice of Acceptance to Defendant / Counter-Complainant.

DELPHI LAW GROUP, LLP

Dated:_____

By: _____

Kyle Lakin

Attorney for Plaintiff STARLIGHT DUNES
HOMEOWNERS ASSOCIATION

8

DEFENDANT'S RESPONSE TO PLAINTIFF'S CCP § 998 OFFER TO COMPROMISE

1

2

3

**PROOF OF SERVICE**

4

5

     I hereby certify that I served a true copy of the foregoing document on counsel for Plaintiff on

6

this, the 2nd  of  day of May, 2025 by first-class mail and electronic mail.

7

Dr. DENNIS D. SADORRA

8

9

10

DEFENDANT (IN PRO PER)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**DEFENDANT'S RESPONSE TO PLAINTIFF'S CCP § 998 OFFER TO COMPROMISE**

Kyle E. Lakin, Esq. (SBN 197928)
DELPHI LAW GROUP, LLP
5868 Owens Avenue, Suite 200
Carlsbad, California 92008
Telephone: 844-433-5744
Facsimile: 760-820-2696
Email: klakin@delphillp.com

# Exhibit A

Attorneys for Plaintiff, STARLIGHT DUNES HOMEOWNERS ASSOCIATION

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF RIVERSIDE, PALM SPRINGS COURTHOUSE

| | |
|---|---|
| STARLIGHT DUNES HOMEOWNERS ASSOCIATION, a California non-profit mutual benefit corporation,<br><br>Plaintiff,<br><br>v.<br><br>DENNIS SADORRA, an individual; and DOES 1 through 20, inclusive,<br><br>Defendants. | CASE NO. PSC2003087<br><br>[Unlimited Civil]<br><br>**PLAINTIFF STARLIGHT DUNES HOMEOWNERS ASSOCIATION'S STATUTORY OFFER TO COMPROMISE PURSUANT TO CODE OF CIVIL PROCEDURE § 998**<br><br>ASSIGNED FOR ALL PURPOSES TO:<br>HON. KIRA L. KLATCHKO<br>DEPT. PS1 |
| DENNIS SADORRA, an individual,<br><br>Cross-Complainant,<br><br>v.<br><br>STARLIGHT DUNES HOMEOWNERS ASSOCIATION, a California nonprofit mutual benefit corporation; DESERT RESORT MANAGEMENT, a California Corporation; JAY BROWN, an individual; MARTIN BONFEDE, an individual; and ROES 1 through 50, inclusive,<br><br>Cross-Defendants. | |

/ / /

---

1
**PLAINTIFF'S STAUTORY OFFER TO COMPROMISE PURSUANT TO CODE CIV. PROC. § 998**

**TO DEFENDANT AND HIS ATTORNEY OF RECORD:**

Please take notice that pursuant to the provisions of Code of Civil Procedure section 998, Plaintiff Starlight Dunes Homeowners Association ("Plaintiff") offers to compromise the claims asserted by Plaintiff against Defendant Dennis Sadorra ("Sadorra") in the Complaint filed in the above-entitled action, all in full and final settlement of Plaintiff's Complaint, by dismissing the Complaint in exchange for the following terms and conditions ("Offer"):

1.  Within sixty (60) days of acceptance of this Offer, Sadorra shall remove any debris, weeds, dead plants, dirt piles and overgrown Bermuda grass from his front and side yards adjacent to Skyward Way and Orion Court at 43810 Skyward Way, La Quinta, California ("Property"), and continue to maintain such property in accordance with Plaintiff's Governing Documents. As used herein, the term "Governing Documents" has the same meaning as that term is defined by Civil Code section 4150.

2.  Plaintiff hereby provides Sadorra architectural approval for the installation of a 6-foot-tall slump block wall, fifty (50) feet long and fifteen (15) feet wide from the side of the house at the Property, with a gate, all as per the diagram attached as Exhibit "1." Block wall materials and appearance to match, as reasonably possible, the existing rear yard block wall at the Property. Gate materials and appearance to match, as reasonably possible, the existing gate adjacent to the driveway at the front left side of the Property. Sadorra shall obtain prior written approval in accordance with Plaintiff's Governing Documents for landscaping to be installed behind the new block wall that will be visible from the Common Area. If Sadorra wants to install a driveway or pathway to the gate for the new wall, he must obtain prior written approval in accordance with Plaintiff's Governing Documents.

3.  Plaintiff reaffirms approval for Sadorra to install and modify the landscaping at the Property in accordance with the letter to Sadorra, dated April 28, 2020, attached as Exhibit "2." For those portions of the side yard of the Property adjacent to Orion Court for which no landscaping and/or improvements were approved in Exhibit "2" ("Side Yard Area"), in accordance with Plaintiff's Governing Documents Sadorra shall install landscaping and/or other improvements in such Side Yard Area in accordance with plans and specifications

2

approved in writing by Plaintiff pursuant to its Governing Documents. If Sadorra wants to deviate from the approved landscaping specified in the letter attached as Exhibit "2" or to install landscaping or other improvements at locations visible from the Common Area that are not covered by the approvals in Exhibit "2," in accordance with Plaintiff's Governing Documents Sadorra shall submit plans and specifications for such landscaping and improvements to Plaintiff and obtain prior written approval from Plaintiff.

4. If Sadorra wants to deviate from the approvals provided herein or modify such improvements after installation, in accordance with Plaintiff's Governing Documents Sadorra shall submit plans and specifications for such deviations and modifications to Plaintiff and obtain prior written approval from Plaintiff.

5. Plaintiff waives its claims alleged in the Complaint for $1,900.00 in unpaid fines and $6,673.50 in unpaid Reimbursement Assessments.

6. Each party shall bear their own costs and attorney's fees incurred and associated with the defense and prosecution of the Complaint.

7. This offer is made under and shall be subject to all of the provisions of the Code of Civil Procedure Section 998.

8. This offer is only made on behalf of the Plaintiff with respect to the Complaint and not on behalf of Cross-Defendant Starlight Dunes Homeowners Association with respect to Sadorra's Cross-Complaint. This offer does not include any waivers of fees and costs incurred by Cross-Defendant Starlight Dunes Homeowners Association in the defense of Sadorra's Cross-Complaint filed against Cross-Defendant Starlight Dunes Homeowners Association.

If this Offer is accepted, Sadorra shall indicate acceptance by (a) having Sadorra's counsel sign and date the Notice of Acceptance below and (b) send it to Plaintiff's counsel, all before the expiration of the offer.

If this Offer is not accepted prior to trial, or within thirty (30) days from the date of service hereof, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial of the Action. If this Offer is not accepted and Sadorra fails to obtain a more favorable judgment, Sadorra will be subject to mandatory cost penalties, as provided under Code of Civil

1    Procedure Section 998, including but not limited to expert witness expenses, litigation costs, and

2    prejudgment interest. Further, the costs and fees to which Plaintiff may be entitled under section 998

3    shall be deducted from any damages awarded to Sadorra, if any. By signing below, Sadorra agrees to

4    accept the foregoing Offer.

5
6                                        DELPHI LAW GROUP, LLP

7
8    DATED:  January 13, 2023              By:    _____
                                                  Kyle lakin
9                                                 Attorneys for Plaintiff STARLIGHT DUNES
                                                  HOMEOWNERS ASSOCIATION
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                                              4

1    **<ins>NOTICE OF ACCEPTANCE OF STATUTORY OFFER OF COMPROMISE</ins>**

2        Defendant Dennis Sadorra hereby accepts Plaintiff Starlight Dunes Homeowners

3    Association's Offer to Compromise for the terms and conditions specified above, by and through

4    Sadorra's attorney of record's execution and delivery of this Notice of Acceptance to Plaintiff's

5    counsel.

6                                        LAW OFFICES OF J. DAVID NICK, APC

7

8    DATED: _____        By: _____

9                                            J. David Nick
                                         Attorneys for Defendant DENNIS SADORRA
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S STAUTORY OFFER TO COMPROMISE PURSUANT TO CODE CIV. PROC. § 998**

*EXHIBIT "1"*



*EXHIBIT "2"*

# STARLIGHT DUNES HOMEOWNERS ASSOCIATION

April 28, 2020

Dennis Sadorra
43810 Skyward Way
La Quinta, CA  92253

Re:     **Architectural Request dated 2-3-2020**
        Subject Property: 43810 Skyward Way

Dear Mr. Sadorra:

On March 14, 2020, Starlight Dunes Homeowners Association received your revised architectural plans dated "**2-3-2020**" for 43810 Skyward Way.  On April 28, 2020, the Association's Board of Directors met to review your revised plans and made the following determinations:

1. New 6' Slump Block Wall:  **Disapproved**. The proposed wall does not conform to the design/aesthetics of the community and would have a negative effect on neighboring property. While other lots have walls, existing walls do not obstruct the line of sight from the front doors of neighboring homes to the street to the same extent as the proposed wall.  The walls you attempt to depict in overhead photos of other lots are distinguishable from the proposed one.  The line of sight from the front door of the lot adjacent to the proposed wall is more severely restricted as compared to the line of sight from the front door of the lots in the example photos. Also, the proposed wall is dangling (*i.e.*, it is not attached to a connecting wall or structure), which does not conform to the general design/aesthetics of the community. **Notwithstanding the foregoing, the Board is amenable to a block wall enclosure similar in dimension and location to the block wall depicted on the attached diagram at Enclosure 1**.  If you wish to install a block wall similar to the enclosed diagram, you must submit a plan for such wall that conforms to the requirements of the architectural guidelines.

2. 18 Fig Trees:  **Disapproved**. The proposed trees, based on their planting location and type, would have a negative effect on neighboring property and the development and do not conform to the design/aesthetics of the community. The Board is concerned that fig trees (or other species of ficus) will pose problems to adjacent curb/street improvements.  In addition, if your intent is to park a trailer in the side yard area and create a vegetative wall to surround the trailer, such design would not comply with the CC&Rs.

3. 20 Torchglow Bougainvillea Plants:  **Approved in part.**  Planting of such plants in the locations and quantities identified on **Enclosure 2** is approved on the condition that such plants are set back a minimum of five (5) feet from the

SADORRA000290

Dennis Sadorra
April 28, 2020
Page 2

adjacent curb and are maintained to a maximum of six (6) feet in height.  All other proposed planting locations are disapproved on the grounds that they would have a negative effect on neighboring property and do not conform to the design/aesthetics of the community.

4. <u>4 Fruit Trees</u>: **Conditionally approved.**  The fruit trees are approved with the understanding that these are the same fruit trees that were approved as part of your February 2019 application and on the condition that they are moved so that the tree trunks are set back a minimum of five (5) feet from the adjacent curb.

5. <u>4"-8" Apache Brown Rock Around Edge of Front Yard</u>:  **Approved.**

6. <u>Artificial Turf</u>:  **Conditionally approved.** In accordance with the Association's March 25, 2019 letter, approval of the artificial turf is conditioned upon the Association's approval of the type of turf to be used and the installation methods.  Association has **not** approved the type of turf and installation method because it needs more information. The Board acknowledges receipt of the three-page Syn Lawn Product Specifications document submitted with your revised plans and requests that you also submit a sample of the turf that you propose to install.

7. <u>Cement Walkway</u>: **Conditionally approved.** The proposed concrete walkway at the locations depicted on the revised plan is approved on the condition that the walkway is made of new, solid concrete (not segmented as depicted in revised plan; and not old or repurposed concrete pieces).

8. <u>Riverrock</u>:  **Approved.**

9. <u>¼" & 1/8" Apache Brown Rock Near Driveway</u>:  **Conditionally approved**. The Apache Brown Rock near the driveway is approved on the condition that the area is not used as a driveway (*i.e.*, vehicles are not parked on the rock).  If you intend to use the area as a driveway, alternative materials (*e.g.*, concrete) would need to be used and the curb would need to be modified to provide a drive path.  If you intend to use the area as a driveway, please submit a revised plan.

10. <u>¾" Crushed Grey Rock in Area Identified as "Trailer Parking"</u>:  **Disapproved.** The proposed quantity and location of the grey rock does not conform with the design/aesthetics of the community.  A smaller area of grey rock might be acceptable, but as proposed with such a large area of grey rock there needs to be other landscaping elements incorporated into the design for such area (*e.g.,* desertscape plants and rocks). In addition, if the intent of the grey rock is to provide a parking area for trailers, the grey rock could not be used for such purposes as this would be in violation of the CC&Rs.

SADORRA000291

Dennis Sadorra
April 28, 2020
Page 3


Please note that the approvals provided herein are additionally conditioned upon you ensuring that the grading of the front/side yard areas is level and provides sufficient drainage.

There is no right of appeal in this case.

We look forward to your cooperation and thank you in advance for helping to make our community a great place to live.

Sincerely,

Jerald J. Cavoretto, CCAM, CMCA, AMS
Community Association Manager
On behalf of the Board of Directors
Starlight Dunes Homeowners Association


cc: Board of Directors

SADORRA000292

**Enclosure 1**



Google Maps

Google Maps

4/28/2020

43805 Galats and 43835 Morningstar

Left line of sight from doorway
of Morningstar intersects with corner of the Wall
on Galaxy Dr.

Imagery ©2020 Google, Map data ©2020    5 ft

SADORRA000293

https://www.google.com/maps/@33.7315047,-116.2909189,18a,35y,180h/data=13m11!e3

1/1



Imagery ©2020 Google, Map data ©2020    5 ft

SADORRA000294

on Galaxy/Ministerct, This follows similar "line of sight".

43810 Skyward Dr. and 43840 Orion ct. similar situation.

Blue line approximates

Blue away from house ≈ 15 feet.

**Enclosure 2**



Materials List

4 Fruit Trees
Mango
Apple
Lime
Orange

18 -Fig Trees 5'
20 - Torchglow
Bogunvillas

Small Rounded Fig
trees next to torchglow
bogunvillas plants
alternating between
each other

¾, 1/8, 4"-8" Apache
Brown Crushed Rock

¾ Crushed grey rock
for trailer parking area

7 Apache Brown 2'-3'
boulders spaced

Artificial Turf

All Trees will be spaced
5 feet from curb

All Torchglow
Bogunvilla plants will
be spaced 4 feet from
curb

6' Slump Block Wall

New 6' Slump Block Wall

¾ Crushed Grey Rock
in trailer parking

EXISTING HOME

8X12 Trailer

8X18 Boat

Cement
Walkways

River rock

Artificial Turf Lawn

4 Fruit
Trees

¾& 1/8 Crushed
Apache Brown Rock

5'-6' tall Fig Trees

4"-8" Crushed
Apache Brown Rock

Torchglow Bogunvilla plants

Location of Approved
Torchglow Bougainvillea Plants

57

SADORRA000295

1

**PROOF OF SERVICE**

2

I, the undersigned declare:

3

I am over the age of eighteen years and not a party to the case; I am employed in, or am a

4

resident of, the County of San Diego, California where the mailing occurs; and my business address

5

is: Delphi Law Group, LLP, 5868 Owens Avenue, Suite 200, Carlsbad, California 92008.

6

My electronic service address is: rrivera@delphillp.com.

7

I am readily familiar with the business' practice for collection and processing of

8

correspondence for mailing with the United States Postal Service; and that pursuant to such practice,

9

correspondence would be deposited with the United States Postal Service the same day in the ordinary

10

course of business.

11

On the date executed below, I caused to be served by mail in accordance with the business'

12

practice for collection and processing of correspondence for mailing, the following document(s):

13

14

**PLAINTIFF STARLIGHT DUNES HOMEOWNERS ASSOCIATION'S STATUTORY OFFER TO COMPROMISE PURSUANT TO CODE OF CIVIL PROCEDURE § 998**

| | |
|---|---|
| 15 16 17 18 | J. David Nick, Esq.<br>LAW OFFICES OF J. DAVID NICK,<br>A Professional Legal Corporation<br>111 E. Tahquitz Canyon Way, Suite 115<br>Palm Springs, CA 92262<br>Telephone: (760) 778-8250<br>jdavidnick@lawyer.com | ***Attorneys for Defendant/Cross-Complainant***<br>DENNIS SADORRA |
| 19 20 21 22 23 24 25 | Teresa M. Beck, Esq.<br>Grace P. Gower, Esq.<br>KLINEDINST<br>501 West Broadway, Suite 600<br>San Diego, CA 92101<br>Telephone: (619) 239-8131<br>Facsimile: (619) 238-8707<br>tbeck@klinedinstlaw.com<br>ggower@klinedinstlaw.com<br>mbridger@klinedinstlaw.com | ***Attorneys for Cross-Defendants STARLIGHT DUNES HOMEOWNERS ASSOCIATION, JAY BROWN and MARTIN BONFEDE*** |

26

27

28

1
PROOF OF SERVICE

1

| Michael C. Parme, Esq. | *Attorneys for Cross-Defendants STARLIGHT* |
| HAIGHT BROWN & BONESTEEL, LLP | *DUNES HOMEOWNERS ASSOCIATION,* |
| 555 S. Flower Street, 45th Floor | *JAY BROWN and MARTIN BONFEDE* |
| Los Angeles, California 90017 | |
| Telephone: (213) 542-8000 | |
| mparme@hbblaw.com | |
| edocs@hbblaw.com | |
| czacevich@hbblaw.com | |

2

3

4

5

6

**[X]    BY MAIL:**    Service was made by mail in accordance with the business' practice for collection and processing of correspondence.  Pursuant to such practice, the document and the name and address of the person to be served are submitted the same day to the business' mail service vendor for mail through the United States Postal Service; the mail service adds the name and address of the person to be served on the envelope for the document and encloses the document in such envelope; the envelope is sealed, with postage thereon fully prepaid, and placed for deposit in the United States Postal Service on the same date, at 9620 Ridge, Suite A, San Diego, CA 92123, following ordinary business practices.

**[ ]    BY ELECTRONIC SERVICE**:  The documents listed above were served electronically on the persons identified above via their e-mail addresses from rrivera@delphillp.com.

**[ ]    PERSONAL SERVICE:** I caused the documents to be delivered to the persons at the addresses listed above.  (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 13, 2023, at San Diego, California.

Signature: _____

Robin Rivera

# Exhibit B





**EXHIBIT B:** Plaintiff's Statutory Offer to Compromise CCP §

998 (January 13, 2023)

# EXHIBIT B

1   Kyle E. Lakin, Esq. (SBN 197928)
    DELPHI LAW GROUP, LLP
2   5868 Owens Avenue, Suite 200
    Carlsbad, California 92008
3   Telephone: 844-433-5744
    Facsimile: 760-820-2696
4   Email: klakin@delphillp.com
5
6   Attorneys for Plaintiff, STARLIGHT DUNES HOMEOWNERS ASSOCIATION
7
                    **SUPERIOR COURT OF CALIFORNIA**
8
            **COUNTY OF RIVERSIDE, PALM SPRINGS COURTHOUSE**
9

| | |
|---|---|
| 10  STARLIGHT DUNES HOMEOWNERS | CASE NO. PSC2003087 |
| 11  ASSOCIATION, a California non-profit | |
| mutual benefit corporation, | [Unlimited Civil] |
| 12 | |
| 13          Plaintiff, | **PLAINTIFF STARLIGHT DUNES HOMEOWNERS ASSOCIATION'S** |
| 14  v. | **STATUTORY OFFER TO COMPROMISE PURSUANT TO CODE OF CIVIL** |
| 15  DENNIS SADORRA, an individual; and | **PROCEDURE § 998** |
| DOES 1 through 20, inclusive, | |
| 16 | ASSIGNED FOR ALL PURPOSES TO: |
| 17          Defendants. | HON. KIRA L. KLATCHKO |
| | DEPT. PS1 |
| 18  DENNIS SADORRA, an individual, | |
| 19          Cross-Complainant, | |
| 20  v. | |
| 21  STARLIGHT DUNES HOMEOWNERS | |
| ASSOCIATION, a California nonprofit mutual | |
| 22  benefit corporation; DESERT RESORT | |
| MANAGEMENT, a California Corporation; | |
| 23  JAY BROWN, an individual; MARTIN | |
| BONFEDE, an individual; and ROES 1 | |
| 24  through 50, inclusive, | |
| 25          Cross-Defendants. | |
| 26 | |

27  / / /

28

PLAINTIFF'S STAUTORY OFFER TO COMPROMISE PURSUANT TO CODE CIV. PROC. § 998

**TO DEFENDANT AND HIS ATTORNEY OF RECORD:**

Please take notice that pursuant to the provisions of Code of Civil Procedure section 998, Plaintiff Starlight Dunes Homeowners Association ("Plaintiff") offers to compromise the claims asserted by Plaintiff against Defendant Dennis Sadorra ("Sadorra") in the Complaint filed in the above-entitled action, all in full and final settlement of Plaintiff's Complaint, by dismissing the Complaint in exchange for the following terms and conditions ("Offer"):

1. Within sixty (60) days of acceptance of this Offer, Sadorra shall remove any debris, weeds, dead plants, dirt piles and overgrown Bermuda grass from his front and side yards adjacent to Skyward Way and Orion Court at 43810 Skyward Way, La Quinta, California ("Property"), and continue to maintain such property in accordance with Plaintiff's Governing Documents. As used herein, the term "Governing Documents" has the same meaning as that term is defined by Civil Code section 4150.

2. Plaintiff hereby provides Sadorra architectural approval for the installation of a 6-foot-tall slump block wall, fifty (50) feet long and fifteen (15) feet wide from the side of the house at the Property, with a gate, all as per the diagram attached as Exhibit "1." Block wall materials and appearance to match, as reasonably possible, the existing rear yard block wall at the Property. Gate materials and appearance to match, as reasonably possible, the existing gate adjacent to the driveway at the front left side of the Property. Sadorra shall obtain prior written approval in accordance with Plaintiff's Governing Documents for landscaping to be installed behind the new block wall that will be visible from the Common Area. If Sadorra wants to install a driveway or pathway to the gate for the new wall, he must obtain prior written approval in accordance with Plaintiff's Governing Documents.

3. Plaintiff reaffirms approval for Sadorra to install and modify the landscaping at the Property in accordance with the letter to Sadorra, dated April 28, 2020, attached as Exhibit "2." For those portions of the side yard of the Property adjacent to Orion Court for which no landscaping and/or improvements were approved in Exhibit "2" ("Side Yard Area"), in accordance with Plaintiff's Governing Documents Sadorra shall install landscaping and/or other improvements in such Side Yard Area in accordance with plans and specifications

2

approved in writing by Plaintiff pursuant to its Governing Documents.  If Sadorra wants to deviate from the approved landscaping specified in the letter attached as Exhibit "2" or to install landscaping or other improvements at locations visible from the Common Area that are not covered by the approvals in Exhibit "2," in accordance with Plaintiff's Governing Documents Sadorra shall submit plans and specifications for such landscaping and improvements to Plaintiff and obtain prior written approval from Plaintiff.

4. If Sadorra wants to deviate from the approvals provided herein or modify such improvements after installation, in accordance with Plaintiff's Governing Documents Sadorra shall submit plans and specifications for such deviations and modifications to Plaintiff and obtain prior written approval from Plaintiff.

5. Plaintiff waives its claims alleged in the Complaint for $1,900.00 in unpaid fines and $6,673.50 in unpaid Reimbursement Assessments.

6. Each party shall bear their own costs and attorney's fees incurred and associated with the defense and prosecution of the Complaint.

7. This offer is made under and shall be subject to all of the provisions of the Code of Civil Procedure Section 998.

8. This offer is only made on behalf of the Plaintiff with respect to the Complaint and not on behalf of Cross-Defendant Starlight Dunes Homeowners Association with respect to Sadorra's Cross-Complaint. This offer does not include any waivers of fees and costs incurred by Cross-Defendant Starlight Dunes Homeowners Association in the defense of Sadorra's Cross-Complaint filed against Cross-Defendant Starlight Dunes Homeowners Association.

If this Offer is accepted, Sadorra shall indicate acceptance by (a) having Sadorra's counsel sign and date the Notice of Acceptance below and (b) send it to Plaintiff's counsel, all before the expiration of the offer.

If this Offer is not accepted prior to trial, or within thirty (30) days from the date of service hereof, whichever occurs first, it shall be deemed withdrawn, and cannot be given in evidence upon the trial of the Action. If this Offer is not accepted and Sadorra fails to obtain a more favorable judgment, Sadorra will be subject to mandatory cost penalties, as provided under Code of Civil

Procedure Section 998, including but not limited to expert witness expenses, litigation costs, and prejudgment interest. Further, the costs and fees to which Plaintiff may be entitled under section 998 shall be deducted from any damages awarded to Sadorra, if any. By signing below, Sadorra agrees to accept the foregoing Offer.

DELPHI LAW GROUP, LLP

DATED:  January 13, 2023          By:  _____
                                           Kyle lakin
                                           Attorneys for Plaintiff STARLIGHT DUNES
                                           HOMEOWNERS ASSOCIATION

**PLAINTIFF'S STAUTORY OFFER TO COMPROMISE PURSUANT TO CODE CIV. PROC. § 998**

**<u>NOTICE OF ACCEPTANCE OF STATUTORY OFFER OF COMPROMISE</u>**

Defendant Dennis Sadorra hereby accepts Plaintiff Starlight Dunes Homeowners Association's Offer to Compromise for the terms and conditions specified above, by and through Sadorra's attorney of record's execution and delivery of this Notice of Acceptance to Plaintiff's counsel.

LAW OFFICES OF J. DAVID NICK, APC


DATED: _____     By: _____
                                   J. David Nick
                                   Attorneys for Defendant DENNIS SADORRA

# EXHIBIT "1"



EXHIBIT "2"

# STARLIGHT DUNES HOMEOWNERS ASSOCIATION

April 28, 2020

Dennis Sadorra
43810 Skyward Way
La Quinta, CA  92253

Re:   **Architectural Request dated 2-3-2020**
      Subject Property: 43810 Skyward Way

Dear Mr. Sadorra:

On March 14, 2020, Starlight Dunes Homeowners Association received your revised architectural plans dated "2-3-2020" for 43810 Skyward Way.  On April 28, 2020, the Association's Board of Directors met to review your revised plans and made the following determinations:

1.  <u>New 6' Slump Block Wall</u>:  **Disapproved**. The proposed wall does not conform to the design/aesthetics of the community and would have a negative effect on neighboring property. While other lots have walls, existing walls do not obstruct the line of sight from the front doors of neighboring homes to the street to the same extent as the proposed wall.  The walls you attempt to depict in overhead photos of other lots are distinguishable from the proposed one.  The line of sight from the front door of the lot adjacent to the proposed wall is more severely restricted as compared to the line of sight from the front door of the lots in the example photos. Also, the proposed wall is dangling (*i.e.*, it is not attached to a connecting wall or structure), which does not conform to the general design/aesthetics of the community.  **Notwithstanding the foregoing, the Board is amenable to a block wall enclosure similar in dimension and location to the block wall depicted on the attached diagram at Enclosure 1**.  If you wish to install a block wall similar to the enclosed diagram, you must submit a plan for such wall that conforms to the requirements of the architectural guidelines.

2.  <u>18 Fig Trees</u>:  **Disapproved**. The proposed trees, based on their planting location and type, would have a negative effect on neighboring property and the development and do not conform to the design/aesthetics of the community. The Board is concerned that fig trees (or other species of ficus) will pose problems to adjacent curb/street improvements.  In addition, if your intent is to park a trailer in the side yard area and create a vegetative wall to surround the trailer, such design would not comply with the CC&Rs.

3.  <u>20 Torchglow Bougainvillea Plants</u>:  **Approved in part.**  Planting of such plants in the locations and quantities identified on **Enclosure 2** is approved on the condition that such plants are set back a minimum of five (5) feet from the

SADORRA000290

Dennis Sadorra
April 28, 2020
Page 2

adjacent curb and are maintained to a maximum of six (6) feet in height. All other proposed planting locations are disapproved on the grounds that they would have a negative effect on neighboring property and do not conform to the design/aesthetics of the community.

4. <u>4 Fruit Trees</u>: **Conditionally approved.** The fruit trees are approved with the understanding that these are the same fruit trees that were approved as part of your February 2019 application and on the condition that they are moved so that the tree trunks are set back a minimum of five (5) feet from the adjacent curb.

5. <u>4"-8" Apache Brown Rock Around Edge of Front Yard</u>: **Approved.**

6. <u>Artificial Turf</u>: **Conditionally approved.** In accordance with the Association's March 25, 2019 letter, approval of the artificial turf is conditioned upon the Association's approval of the type of turf to be used and the installation methods. Association has **not** approved the type of turf and installation method because it needs more information. The Board acknowledges receipt of the three-page Syn Lawn Product Specifications document submitted with your revised plans and requests that you also submit a sample of the turf that you propose to install.

7. <u>Cement Walkway</u>: **Conditionally approved.** The proposed concrete walkway at the locations depicted on the revised plan is approved on the condition that the walkway is made of new, solid concrete (not segmented as depicted in revised plan; and not old or repurposed concrete pieces).

8. <u>Riverrock</u>: **Approved.**

9. <u>¼" & 1/8" Apache Brown Rock Near Driveway</u>: **Conditionally approved.** The Apache Brown Rock near the driveway is approved on the condition that the area is not used as a driveway (*i.e.*, vehicles are not parked on the rock). If you intend to use the area as a driveway, alternative materials (*e.g.*, concrete) would need to be used and the curb would need to be modified to provide a drive path. If you intend to use the area as a driveway, please submit a revised plan.

10. <u>¾" Crushed Grey Rock in Area Identified as "Trailer Parking"</u>: **Disapproved.** The proposed quantity and location of the grey rock does not conform with the design/aesthetics of the community. A smaller area of grey rock might be acceptable, but as proposed with such a large area of grey rock there needs to be other landscaping elements incorporated into the design for such area (*e.g.,* desertscape plants and rocks). In addition, if the intent of the grey rock is to provide a parking area for trailers, the grey rock could not be used for such purposes as this would be in violation of the CC&Rs.

SADORRA000291

Dennis Sadorra
April 28, 2020
Page 3

Please note that the approvals provided herein are additionally conditioned upon you ensuring that the grading of the front/side yard areas is level and provides sufficient drainage.

There is no right of appeal in this case.

We look forward to your cooperation and thank you in advance for helping to make our community a great place to live.

Sincerely,

Jerald J. Cavoretto, CCAM, CMCA, AMS
Community Association Manager
On behalf of the Board of Directors
Starlight Dunes Homeowners Association

cc: Board of Directors

SADORRA000292

**Enclosure 1**

4/28/2020

Google Maps

**Google** Maps



Imagery ©2020 Google, Map data ©2020   5 ft

SADORRA000293

43805 Galatt and 43585 Morningstar

Left line of sight from doorway
at Morningstar intersects with corner of the wall
on Galaxy Dr.

https://www.google.com/maps/@33.7315047,-116.2909189,18a,35y,180h/data=!3m1!1e3

1/1

43810 Skyward Dr. and 43840 Orion ct.
on Galaxy/Moonster ct. This similar situation
• Blue line approximates "line of sight".
follows similar "line of sight".
Blue away from huse ≈ 15 feet.

SADORRA000294

4/28/2020

Google Maps

Imagery ©2020 Google, Map data ©2020    5 ft

https://www.google.com/maps/@33.7298599,-116.2870792,11m/data=!3m1!1e3

74

1/1

**Enclosure 2**



Materials List

4 Fruit Trees
Mango
Apple
Lime
Orange

18 -Fig Trees 5'
20 - Torchglow Bogunvillas

Small Rounded Fig trees next to torchglow bogunvillas plants alternating between each other

¾, 1/8, 4"-8" Apache Brown Crushed Rock

¾ Crushed grey rock for trailer parking area

7 Apache Brown 2'-3' boulders spaced

Artificial Turf

All Trees will be spaced 5 feet from curb

All Torchglow Bogunvilla plants will be spaced 4 feet from curb

6' Slump Block Wall

New 6' Slump Block Wall

¾ Crushed Grey Rock in trailer parking

EXISTING HOME

8X12 Trailer

8X18 Boat

Cement Walkways

River rock

Artificial Turf Lawn

4 Fruit Trees

¾ & 1/8 Crushed Apache Brown Rock

5'-6' tall Fig Trees

4"-8" Crushed Apache Brown Rock

Torchglow Bogunvilla plants

Location of Approved Torchglow Bougainvillea Plants

SADORRA000295

1    **PROOF OF SERVICE**

2         I, the undersigned declare:

3         I am over the age of eighteen years and not a party to the case; I am employed in, or am a

4    resident of, the County of San Diego, California where the mailing occurs; and my business address

5    is: Delphi Law Group, LLP, 5868 Owens Avenue, Suite 200, Carlsbad, California 92008.

6         My electronic service address is: rrivera@delphillp.com.

7         I am readily familiar with the business' practice for collection and processing of

8    correspondence for mailing with the United States Postal Service; and that pursuant to such practice,

9    correspondence would be deposited with the United States Postal Service the same day in the ordinary

10    course of business.

11         On the date executed below, I caused to be served by mail in accordance with the business'

12    practice for collection and processing of correspondence for mailing, the following document(s):

13    **PLAINTIFF STARLIGHT DUNES HOMEOWNERS ASSOCIATION'S STATUTORY**
**OFFER TO COMPROMISE PURSUANT TO CODE OF CIVIL PROCEDURE § 998**

14

| | |
|---|---|
| J. David Nick, Esq.<br>LAW OFFICES OF J. DAVID NICK,<br>A Professional Legal Corporation<br>111 E. Tahquitz Canyon Way, Suite 115<br>Palm Springs, CA 92262<br>Telephone: (760) 778-8250<br>jdavidnick@lawyer.com | *Attorneys for Defendant/Cross-Complainant*<br>DENNIS SADORRA |
| Teresa M. Beck, Esq.<br>Grace P. Gower, Esq.<br>KLINEDINST<br>501 West Broadway, Suite 600<br>San Diego, CA 92101<br>Telephone: (619) 239-8131<br>Facsimile: (619) 238-8707<br>tbeck@klinedinstlaw.com<br>ggower@klinedinstlaw.com<br>mbridger@klinedinstlaw.com | *Attorneys for Cross-Defendants STARLIGHT*<br>*DUNES HOMEOWNERS ASSOCIATION,*<br>*JAY BROWN and MARTIN BONFEDE* |

1

PROOF OF SERVICE

| | |
|---|---|
| Michael C. Parme, Esq.<br>HAIGHT BROWN & BONESTEEL, LLP<br>555 S. Flower Street, 45th Floor<br>Los Angeles, California 90017<br>Telephone: (213) 542-8000<br>mparme@hbblaw.com<br>edocs@hbblaw.com<br>czacevich@hbblaw.com | *Attorneys for Cross-Defendants STARLIGHT DUNES HOMEOWNERS ASSOCIATION, JAY BROWN and MARTIN BONFEDE* |

**[X]   BY MAIL:** Service was made by mail in accordance with the business' practice for collection and processing of correspondence. Pursuant to such practice, the document and the name and address of the person to be served are submitted the same day to the business' mail service vendor for mail through the United States Postal Service; the mail service adds the name and address of the person to be served on the envelope for the document and encloses the document in such envelope; the envelope is sealed, with postage thereon fully prepaid, and placed for deposit in the United States Postal Service on the same date, at 9620 Ridge, Suite A, San Diego, CA 92123, following ordinary business practices.

**[ ]   BY ELECTRONIC SERVICE**: The documents listed above were served electronically on the persons identified above via their e-mail addresses from rrivera@delphillp.com.

**[ ]   PERSONAL SERVICE:** I caused the documents to be delivered to the persons at the addresses listed above. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 13, 2023, at San Diego, California.

Signature: _____

Robin Rivera

**EXHIBIT C:** Property Site Plans - Dr. Sadorra's Security

Wall Design Plans

# EXHIBIT C



**EXHIBIT D:** Application for Architectural/Landscape

Modification Approval (May 12, 2020)

# EXHIBIT D

## STARLIGHT DUNES HOMEOWNERS ASSOCIATION

### APPLICATION FOR ARCHITECTURAL/LANDSCAPE MODIFICATION APPROVAL

Date: 5-12-20

Owners Name: Dennis Sadorra

Property Address: 43810 Skyward Way La Quinta, Ca. 92253

Phone: (760) 880-8416                    Email: dennissadorra@gmail.com

Modification requested: Install 6' slump block wall w/ gates and bougainvillea plants

(Re-painting of house does not require drawings or permits submitted)

You are hereby advised that the above work is proposed and approval is requested. Attached, are drawings to scale (minimum 1/8" = 1') of the work to be done and types of materials to be used are indicated on the drawings. We understand that Building Permits for some modifications are required by the City of La Quinta and the costs of the permits and the responsibility of obtaining permits and subsequent inspection will be borne by the applicant.

We acknowledge that all approved changes in the original design will be at our expense; that any damage to or relocation of existing sprinkler systems, underground utilities, building structure and exterior landscaping to other damage to Association property resulting from the construction and/or installation of these permitted improvements shall be at our expense.

We acknowledge a security deposit of __0__ 10% __0__ 20% __0__ None of the total cost of the project is required to cover any damage to the common area or clean-up necessary for the completion of the project. Deposit amount will be determined by the ALC in relation to the extent of the work. The deposit must be submitted prior to commencement of work. After inspection of the completed project by the ALC, the deposit will be refunded if all components are restored to original or better condition.

**NOTE:** Construction/Installation of requested and approved modifications must begin within 45 days of receipt of written approval and said modifications must be completed within 90 days of written approval. Prior to commencement of proposed modification, please submit with this application Contractors Insurance, Bond and copy of license if other than homeowner installation. Failure to comply with these or any of the above specifications will result in the nullification of this document and subsequent approval thereof. *The thirty (30) day review period does not commence until a complete application has been received by the ALC.*

Owner Signature: _____

Mailing Address: 43810 Skyward Way La Quinta, Ca. 92253

Phone: (760) 880-8416

(Architectural Application, Page 1 of 2)

Send to:
Starlight Dunes HOA
c/o Desert Resort Management, Inc.
42635 Melanie Place, Suite 103
Palm Desert, CA 92211
Attn: Architectural/Landscape Committee

Or Email to (if in email form):
Jerry Cavoretto, Community Association Manager
jcavoretto@drminternet.com

.......................................................................

The above request has been reviewed by the ALC and has been:
[ ] Approved        [ ] Denied         [ ] Pending

Comments: _____
_____
_____

Date Reviewed: _____        Deposit Amount: _$0_____

Approved By: _____        _____
                        (must have two signatures)

(Architectural Application, Page 2 of 2)





**EXHIBIT E:** Application for Architectural/Landscape

Modification Approval (September 10, 2020) - "Install

Desert Landscape and Block Wall"

# EXHIBIT E

## STARLIGHT DUNES HOMEOWNERS ASSOCIATION

### APPLICATION FOR ARCHITECTURAL/LANDSCAPE MODIFICATION APPROVAL

Date: 4/20/18

Owners Name: Dennis Sadorra

Property Address: 43810 Skyward Way La Quinta, Ca. 92253

Phone: (760) 880-8416                    Email: dennissadorra@gmail.com

Modification requested: Install Desert Landscape and Block Wall
(Re-painting of house does not require drawings or permits submitted)

You are hereby advised that the above work is proposed and approval is requested. Attached, are drawings to scale (minimum 1/8" = 1') of the work to be done and types of materials to be used are indicated on the drawings. We understand that Building Permits for some modifications are required by the City of La Quinta and the costs of the permits and the responsibility of obtaining permits and subsequent inspection will be borne by the applicant.

We acknowledge that all approved changes in the original design will be at our expense; that any damage to or relocation of existing sprinkler systems, underground utilities, building structure and exterior landscaping to other damage to Association property resulting from the construction and/or installation of these permitted improvements shall be at our expense.

We acknowledge a security deposit of _0_ 10%   _0_ 20%   _0_ None of the total cost of the project is required to cover any damage to the common area or clean-up necessary for the completion of the project. Deposit amount will be determined by the ALC in relation to the extent of the work. The deposit must be submitted prior to commencement of work. After inspection of the completed project by the ALC, the deposit will be refunded if all components are restored to original or better condition.

**NOTE:** Construction/Installation of requested and approved modifications must begin within 45 days of receipt of written approval and said modifications must be completed within 90 days of written approval. Prior to commencement of proposed modification, please submit with this application Contractors Insurance, Bond and copy of license if other than homeowner installation. Failure to comply with these or any of the above specifications will result in the nullification of this document and subsequent approval thereof. *The thirty (30) day review period does not commence until a complete application has been received by the ALC.*

Owner Signature: _____

Mailing Address: 43810 Skyward Way La Quinta, Ca. 92253

Phone: (760) 880-8416

(Architectural Application, Page 1 of 2)

Send to:
Starlight Dunes HOA
c/o Desert Resort Management, Inc.
42635 Melanie Place, Suite 103
Palm Desert, CA 92211
Attn: Architectural/Landscape Committee

Or Email to (if in email form):
Jerry Cavoretto, Community Association Manager
jcavoretto@drminternet.com

..........................................................................

The above request has been reviewed by the ALC and has been:
[ ] Approved         [ ] Denied        [ ] Pending

Comments: _____
_____
_____
_____

Date Reviewed: _____      Deposit Amount: __$0_____

Approved By: _____        _____
                        (must have two signatures)

(Architectural Application, Page 2 of 2)